40 P.3d 930

**Lewis W. POE, Complainant/Appellant–Appellant,**

v.

**HAWAI'I LABOR RELATIONS BOARD, State of Hawai'i, Appellee–Appellee,**

and

**Benjamin J. Cayetano, Governor, State of Hawai'i, Respondent/Appellee–Appellee.**

No. 23163.

Supreme Court of Hawai'i.

Feb. 25, 2002.

Lewis W. Poe, on the briefs, Complainant/Appellant–Appellant, pro se.

Valri Lei Kunimoto, on the briefs, Honolulu, for Appellee–Appellee Hawai'i Labor Relations Appeals Board, State of Hawai'i.

Kathleen N.A. Watanabe and Sarah R. Hirakami, Deputy Attorneys General, on the briefs, for Respondent/Appellee–Appellee Benjamin J. Cayetano, Governor, State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that under Hawai'i Revised Statutes (HRS) chapter 89, pertaining to collective bargaining in public employment, a public employee pursuing an individual grievance exhausts his or her administrative remedies when the employee completes every step available to the employee in the grievance process and a request to the employee's exclusive bargaining representative to proceed to the last grievance step, which only the representative can undertake, would be futile. Accordingly, where, as here, the Hawai'i Government Employees Association (HGEA or Union), the exclusive bargaining representative of Complainant/Appellant–Appellant Lewis W. Poe, did not respond to or participate in meetings concerning Poe's individual grievance, but separately engaged in negotiations regarding the general subject matter of the grievance with the public employer, Respondent/Appellee–Appellee Benjamin J. Cayetano, Governor, State of Hawai'i (the Employer), it would be futile for Poe to request that the HGEA proceed to the last grievance step, which only the HGEA could undertake, before filing a prohibited practice complaint against the Employer. That part of the order of Appellee–

Appellee Hawai'i Labor Relations Appeals Board, State of Hawai'i (the HLRB) that is to the contrary, while wrong, was not reversible error in this case.

Although we believe Poe had exhausted his administrative remedies, his complaint was properly denied, inasmuch as Poe was not entitled (1) to bring his grievance against the Employer to the HLRB under HRS § 89–11(a) (Supp.2000) or (2) to pursue his grievance beyond the steps outlined in HRS § 89–8(b) (1993) or the individual grievance provision of the collective bargaining agreement in this case. The HLRB thus correctly rejected Poe's claim that the Employer had (1) committed prohibited practice violations under HRS § 89–13(a)(7) and (8) (1993) and (2) contravened the statement of policy of HRS chapter 89 as set forth in HRS § 89–1 (1993). Therefore, we affirm the December 15, 1999 order of the first circuit court (the court)[1] that affirmed the June 15, 1999 order of the HLRB and the court's January 21, 2000 judgment entered thereon.

## I.

■ The HLRB's findings of fact and the record in this case reflect the following. Since 1991, Poe has been employed as a Harbor Traffic Controller I by the State of Hawai'i Department of Transportation (DOT), at the Marine Traffic Control Center at Aloha Tower on O'ahu. He is a public employee within the meaning of HRS § 89–2 (1993).[2] The HGEA is the collective bargaining representative of Poe's bargaining unit.[3] The Governor is a public employer within the meaning of HRS § 89–2.[4] The Employer and the HGEA have entered into a collective

---

1. The Honorable Linda K.C. Luke presided over this matter.

2. HRS § 89–2 defines "public employee" as "any person employed by a public employer except elected and appointed officials and such other employees as may be excluded from coverage in section 89–6(c)."

3. HRS § 89–8(a) (1993) states *inter alia* that

   [t]he employee organization which has been certified by the board as representing the majority of employees in an appropriate bargain-

   ing unit shall be the exclusive representative of all employees in the unit. As exclusive representative, it shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership.

4. "Public employer" is defined as "the governor in case of the State ... and any individual who represents [the governor] or acts in [the governor's] interest in dealing with public employees." HRS § 89–2.

bargaining agreement (agreement)[5] for Poe's unit.

Article 21 of the agreement provides in pertinent part that "[a]ll [e]mployees shall be allowed rest periods of ten (10) minutes" at intervals during the employees' work shifts.[6]

Article 11 of the agreement[7] provides that "[a]ny complaint by an Employee or the Union concerning the application and inter-pretation of this Agreement shall be subject to the grievance procedure." The grievance procedure provides for an informal grievance step,[8] three formal steps,[9] and a final formal step of arbitration, which only HGEA can initiate.[10]

Poe filed a Step 1 grievance with Thomas T. Fujikawa, the Harbors Administrator, by letter dated June 16, 1997, alleging that the

5. HRS § 89–2 defines "collective bargaining" as "the performance of the mutual obligations of the public employer and the exclusive represen-tative to meet at reasonable times, to confer and negotiate in good faith, and to execute a *written agreement* with respect to wages, hours, amounts of contributions by the State and counties to the Hawai'i public employees health fund, and other terms and conditions of employment, except that by such obligation neither party shall be com-pelled to agree to a proposal, or be required to make a concession:" (Emphasis added.) A "collective bargaining agreement," then, is that written agreement arising out of collective bar-gaining.

6. Specifically, Article 21 of the agreement pro-vides as follows:
    All Employees shall be allowed rest periods of ten (10) minutes during each half of the work-day or work shift and before each two (2) hours of continuous overtime work performed after completing a regular workday or work shift of eight (8) hours. The times and loca-tions at which rest periods shall be taken are to be determined by the department head or a designee of the department head after giving due consideration to the desires of the Employ-ees and the requirements of the department.

7. The only copy of Article 11 in the record is Exhibit E, which is attached to Poe's April 14, 1999 answering affidavit regarding the Employ-er's April 1, 1999 motion to dismiss before the HLRB. Exhibit E contains bracketed and under-scored language as quoted *infra*. *See infra* notes 8, 9, and 10. Although not stated, that exhibit apparently was an attachment to a notice indi-cating that amendments were to be made to Article 11, showing deleted materials in brackets and new language underscored. While it is not clear which version is in effect at the time of this case, the original or amended versions do not differ significantly and, therefore, do not alter our decision. We note that in its October 25, 1999 Answering Brief to the circuit court, the Employer quoted the bracketed version of Article 11.

8. Article 11 of the agreement describes the infor-mal grievance step as follows:
    C. Informal Step. A grievance shall, when-ever possible, be discussed informally between the Employee and the immediate supervisor within the twenty (20) working day limitation

... The [grievant] Employee may be assisted by a Union representative. If the immediate supervisor does not reply by seven (7) working days, the Employee or the Union may pursue the grievance to the next step.
(Underscored and bracketed materials in origi-nal.)

9. Article 11 of the agreement describes the first three formal steps as follows:
    D. Step 1. If the [grievant is not satisfied with the result of the informal conference] grievance is not satisfactorily resolved at the informal step, the [grievant] Employee or the Union may sub-mit a written statement of the grievance within seven (7) working days after [receiving the an-swers] receipt of the reply to the informal com-plaint to the division head or designee; or if the immediate supervisor does not reply to the infor-mal complaint within seven (7) working days, the Employee or the Union may submit a written statement of the grievance to the division head or designee within fourteen (14) working days from the initial submission of the informal com-plaint[.]
    E. Step 2. If the grievance is not satisfactorily resolved at Step 1, the [grievant] Employee or the Union may appeal the grievance in writing to the department head or designee within seven (7) working days after [receiving the written answer] receipt of the reply at Step 1. ...
    G. Step 3. ... [T]he [grievant] Employee or the Union **may appeal the grievance in writing to the Employer or designee** within seven (7) work-ing days after receipt of the [answer] reply at Step 2. [Within seven (7) working days after receipt of the appeal, the Employer and the Un-ion shall meet in an attempt to resolve the griev-ance.]
(Boldfaced emphases added.) (Underscored and bracketed materials in original.)

10. H. Step 4. Arbitration. **If the grievance is not satisfactorily resolved at Step 3 and the Union desires to proceed with arbitration,** it shall serve written notice on the Employer or designated representative of its desire to arbi-trate within ten (10) working days after receipt of the [Employer's decision] reply at Step 3. Representatives of the parties shall attempt to select an arbitrator immediately thereafter.
(Boldfaced emphasis added.) (Underscored and bracketed materials in original.)

Employer failed to provide rest periods as mandated in Article 21. Fujikawa answered that, at the time Poe was hired, the job applicants indicated that they would have no problem eating and taking their breaks whenever time permitted, because they could not leave the observation area.

By letter dated July 28, 1997, Poe filed a Step 2 grievance with DOT Director, Kazu Hayashida. Hayashida responded to Poe's Step 2 grievance in a letter dated December 10, 1997. Hayashida's letter declared that several meetings were held between Poe and a DOT staff member to resolve the grievance. Because the division was unable to provide rest periods, Poe and the department had tentatively agreed, subject to the concurrence of the Union and other employees by way of a memorandum of agreement, to credit the Controllers with two hours of straight time pay per pay period in lieu of the two ten-minute rest periods per shift, retroactive to June 16, 1997. Hayashida asked that Poe advise when Poe could meet with the Union and the DOT to discuss the terms of the memorandum.

Poe requested, in a letter dated June 17, 1998, that his union, the HGEA, represent the Controllers as a class to enforce the provisions of Article 21, retroactive to July 1993. By a letter dated June 26, 1998, Poe transmitted his June 17, 1998 letter to HGEA to Amador Casupang, DOT Personnel Specialist. Poe temporarily deferred pursuit of his grievance on the condition that HGEA undertake representation of the Controllers on the rest period matter. If the HGEA did not do so, Poe indicated he would advance his own grievance.

In a letter dated July 19, 1998, Poe informed Casupang that the HGEA did not respond and requested that his individual grievance be processed at Step 2, indicating that he represented only himself. Poe wrote to Hayashida regarding a Step 2 meeting held on July 27, 1998. The letter dated July 29, 1998, stated, *inter alia*, that Casupang

had informed Poe that the DOT made inquiry "only initially with the HGEA (for its input) and ha[d] been consulting with the [Department of Human Resources Development (DHRD)] ... regarding .... rest periods."

James Takushi, then-director of DHRD, responded in a letter dated September 23, 1998, that the DOT issued a Step 2 reply to Poe on December 10, 1997. While the reply was not DOT's final position, Takushi explained that it served to further discussions and that the DOT and the HGEA were engaged in ongoing discussions to resolve the Article 21 issue on behalf of all Controllers.

By letter dated December 6, 1998, Poe filed a Step 3 grievance appeal on the rest periods matter.

Mike McCartney, then-director of DHRD, wrote a letter to Poe, dated January 22, 1999, indicating that the DOT and HGEA were engaged in efforts to resolve the rest period dispute and denied the remedy Poe sought as an individual.

II.

On February 17, 1999, Poe filed a prohibited practice complaint against the Employer with the HLRB.

In his complaint, Poe contended that his individual grievance was "independent of any ... discussion between the DOT and the HGEA" in resolving the rest periods issue and "[did] not preempt [his] grievance." Thus, he apparently maintained that, by denying him the relief sought as an *individual* for the Article 21 violation, the Employer "deliberately refused or failed to comply with one or more provisions of chapter 89," thereby "violat[ing][HRS] § 89–13(a)(7)." Additionally, by continuing to contravene Article 21, Poe asserted that the Employer has violated HRS § 89–13(a)(8).[11]

11.  HRS § 89–13(a)(7) and (8) provide as follows:
**Prohibited practices; evidence of bad faith.**
(a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:
    . . . .

(7) Refuse or fail to comply with any provision of this chapter;
(8) Violate the terms of a collective bargaining agreement[.]
(Boldfaced type in original.)

Poe maintained that McCarthy's January 22, 1999 letter, which disclosed that the DOT and the HGEA were attempting to resolve the rest period dispute and denied his individual grievance, had "elevated . . . the legal status . . . of the HGEA . . . above the legal status . . . of [himself]," thereby "violat[ing], negat[ing], and/or nullify[ing] . . . HRS §§ 89–8(b) [12] and/or 89–11(a)." [13]

Finally, Poe asserted that, by "continuing to violate Article 21," the Employer "violated the declared public policy of HRS § 89–1" [14] by not "promot[ing] harmonious and/or cooperative relations between itself and . . . its employees[.]"

### III.

The HLRB dismissed the complaint with respect to Poe's allegations that HRS §§ 89–13(a)(8), 89–1, and 89–11(a) had been violated, and granted summary judgment in favor of Employer as to the alleged violation of HRS § 89–8(b).[15]

In its decision, the HLRB observed that (1) "Article 11 of the [agreement] provides a grievance procedure consisting of an informal step and four steps," Step 4 being arbitration that "only the union can request," and that (2) "Poe filed his individual grievance" and "pursued [it] through [Steps 1, 2, and 3]." Citing *Santos v. State*, 64 Haw. 648, 646 P.2d 962 (1982),[16] the HLRB explained that, "before an individual can maintain an action against his [or her] employer, the individual must at least attempt to utilize the contract procedures agreed upon between his [or her] employer and the union." According to the HLRB, Poe, however, did not request the HGEA to take his grievance to arbitration. The HLRB determined that "[i]f the [HGEA had] decline[d] to take [Poe's] case to arbitration, [then] Poe [could have] file[d] a prohibited practice complaint against the Union alleging a breach of its duty of fair representative [sic] because of [its] refusal to take the matter to arbitration."

Rather, Poe filed his complaint with the HLRB "to have [the HLRB] determine the Employer's alleged . . . violation[ ] [of Article 21] in the same way that an arbitrator would review the grievance at Step 4 [pursuant to]

12. HRS § 89–8(b) provides as follows:
   **Recognition and representation; employee participation.. . .**
   (b) An individual employee *may present a grievance at any time to the employee's employer and have the grievance heard* without intervention of an employee organization; provided that the exclusive representative is afforded the opportunity to be present at such conferences and that *any* adjustment made shall not be inconsistent with the terms of an agreement then in effect between the employer and the exclusive representative.
   (Boldfaced type in original.) (Emphasis added.)

13. HRS § 89–11(a) provides as follows:
   **Resolution of disputes; grievances; impasses.** *A public employer shall have the power to enter into written agreement with the exclusive representative of an appropriate bargaining unit setting forth a grievance procedure culminating in a final and binding decision*, to be invoked in the event of any dispute concerning the interpretation or application of a written agreement. *In the absence of such a procedure, either party may submit the dispute to the board for a final and binding decision.* A dispute over the terms of an initial or renewed agreement does not constitute a grievance.
   (Boldfaced type in original.) (Emphases added.)

14. HRS § 89–1 entitled "Statement of findings and policy," states that the purpose of HRS chapter 89 is to promote "harmonious and cooperative relations between government and its employees" that is "effectuated by, [*inter alia*,] . . . requiring the public employers to negotiate with and enter into written agreements with exclusive representatives on matters of . . . conditions of employment[.]"

15. We note that, in its conclusions of law, the HLRB stated that "[Poe] failed to state a claim for relief of § 89–13(a)(7), HRS, where it was beyond a doubt that [Poe] could not prove a set of facts in support of his claim that would entitle him to relief for violations of §§ 89–1 and 89–11(a), HRS." The HLRB did not mention HRS § 89–13(a)(7) in its order. However, inasmuch as the HRS § 89–13(a)(7) claim (referring to the "[r]efus[al] or fail[ure] to comply with any provision of this chapter") was dependent upon purported violations of HRS §§ 89–1 and 89–11(a) and no such violations were found, the claim was subsumed in the order's denial of Poe's HRS §§ 89–1 and 89–11(a) claims.

16. *Santos* explained that "[i]t is the general rule that before an individual can maintain an action against his [or her] employer, the individual must at least attempt to utilize the contract grievance procedures agreed upon by his [or her] employer and the [union]." 64 Haw. at 655, 646 P.2d at 967 (citation omitted).

the grievance procedure." Relying on *Winslow v. State*, 2 Haw.App. 50, 625 P.2d 1046 (1981), the HLRB concluded that "Poe cannot seek remedies for alleged contractual violations before the [HLRB] without first exhausting his contractual remedies," and, thus, dismissed Poe's HRS § 89–13(a)(8) allegation that the Employer violated Article 21.

With respect to Poe's HRS § 89–8(b) allegation, the HLRB found it undisputed that "Poe presented his grievance to his Employer and [that it was] heard without the intervention of the HGEA[,] ... [although] the HGEA was afforded the opportunity to be present at the grievance meetings[ ]" and "that the HGEA [was] involved in attempting to reach a resolution of the rest periods issue on behalf of all of the affected employees with the Employer." Considering the HGEA's status "as the exclusive representative to negotiate on behalf of the affected employees and the obligation of the Employer to deal with the exclusive representative of the employees," the HLRB concluded that "[t]he Employer [did] not commit a prohibited practice by negotiating a resolution of a dispute initially raised by [Poe] with the [HGEA]." Finding no material facts in dispute with respect to this issue, summary judgment was granted in favor of the Employer with respect to Poe's allegation that the Employer "elevated ... the legal status ... of the HGEA ... above the legal status ... of [Poe]."

Noting that HRS § 89–1 "provides a general statement of findings and public policy underlying the collective bargaining law" and that HRS § 89–11(a) "provides that the public employer may enter into a written agreement providing for a grievance procedure which culminates in a final and binding decision," the HLRB viewed Poe's complaint "in a light most favorable to [him]" and found "beyond doubt" that Poe could not prove a

"set of facts in support of [his] claims which would entitle him to relief." The HLRB thus dismissed Poe's allegations that the Employer had not "promot[ed] harmonious and/or cooperative relations between itself and ... its employees" and had "deni[ed him] full and meaningful access to the ... grievance procedure."

Having dismissed Poe's HRS §§ 89–13(a)(8), 89–1, and 89–11(a) claims and having granted summary judgment on Poe's HRS § 89–8(b) claim, the Board found that Poe "failed to state a claim for relief" as to his HRS § 89–13(a)(7) claim that the Employer "[r]efuse[d] or fail[ed] to comply with any provision of this chapter [89]."

### IV.

Poe appealed to the circuit court, pursuant to HRS § 91–14 (1993). *See infra* note 17. In a December 15, 1999 order and January 21, 2000 judgment entered thereon, the court affirmed the HLRB order and denied Poe's appeal. Poe subsequently appealed to this court.

### V.

Our review of the court's order and judgment is by way of secondary appeal. In *Steinberg v. Hoshijo*, 88 Hawai'i 10, 960 P.2d 1218 (1998), this court explained that

> [r]eview of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) to the agency's decision.[17]

*Id.* at 15, 960 P.2d at 1223 (brackets omitted).

 Conclusions of law are freely reviewable under the right/wrong standard.

---

17. HRS § 91–14(g) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

An appeal from an agency's findings of fact are reviewed under the clearly erroneous standard. *See Zemis v. SCI Contractors, Inc.,* 80 Hawai'i 442, 445, 911 P.2d 77, 80 (1996); *Dole Hawai'i Division–Castle & Cooke v. Ramil,* 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990).

■ "An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made." *Kilauea Neighborhood Ass'n v. Land Use Comm'n,* 7 Haw.App. 227, 229–30, 751 P.2d 1031, 1034 (1988) (citations omitted).

■ Poe does not contest the findings, except that he disputes whether DOT and HGEA were involved in negotiations to resolve the Article 21 dispute. Unchallenged findings are binding on appeal. *See Robert's Hawai'i School Bus, Inc. v. Laupahoehoe Transp. Co., Inc.,* 91 Hawai'i 224, 239, 982 P.2d 853, 868 (1999) ("Findings of fact that are unchallenged on appeal are the operative facts of a case." (Citing *Crosby v. State Dept. of Budget & Fin.,* 76 Hawai'i 332, 340, 876 P.2d 1300, 1308 (1994), *cert denied,* 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 635 (1995).)).

### VI.

On appeal to this court from the court's order, Poe maintains, in the questions presented for our review, that (1) he "exhaust[ed] his available contractual remedies," (2) "the HLRB acted arbitrarily, abuse[d] its authority and/or discretion, and/or exceed[ed] its legal authority when it declared ... that Poe had a 'post-step-three' duty to ask the Union to initiate Step 4 of the [grievance procedure]," (3) "it [was not] beyond a doubt that Poe could not prove a set of facts against the Employer in support of his claim which would entitle him to relief for the violation of HRS § 89–11(a) and/or HRS § 89–8(b)," and (4) "the HLRB's finding of fact that 'there is no dispute that the Union was [lawfully] negotiating a resolution of a

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarrant-

class grievance with the Employer' [was] clearly erroneous."

### VII.

As to Poe's first and second questions, we agree that neither chapter 89 nor the agreement requires individual employees pursuing a grievance to enlist the aid of the representative, here HGEA, where it would be futile and, thus, Poe was not required to do so in order to exhaust his contractual or administrative remedies. However, we perceive no reversible error.

### A.

■ "Whenever exhaustion [of administrative remedies] will be futile it is not required." 4 Davis, *Administrative Law Treatise* § 26:11 (2d. ed.1983). *See also McNeese v. Board of Educ.,* 373 U.S. 668, 674–75, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) (determining that a statutory right to "request" the Illinois Attorney General to bring suit was deemed an inadequate remedy); *In re Doe Children,* 96 Hawai'i 272, 287 n.20, 30 P.3d 878, 893 n. 20 (2001) (defining futility as "the inability of an administrative process to provide the appropriate relief") (citing *Hokama v. University of Hawai'i,* 92 Hawai'i 268, 273, 990 P.2d 1150, 1155 (1999)). In labor relations law, the general rule is that an employee is required to exhaust contractual remedies before bringing suit. *See Hokama,* 92 Hawai'i at 272, 990 P.2d at 1154; *Santos,* 64 Haw. at 655, 646 P.2d at 967; *Marshall v. University of Hawai'i,* 9 Haw.App. 21, 30, 821 P.2d 937, 943 (1991); *Winslow,* 2 Haw. App. at 55, 625 P.2d at 1050. Thus, "[i]ndividuals who sue their employers for breach of a collective bargaining agreement must first *attempt* exhaustion of remedies under that agreement." *Chambers v. McLean Trucking Co., Inc.,* 550 F.Supp. 1335, 1344–45 (M.D.N.C.1981) (emphasis in original).

However, exceptions to this doctrine exist, such as when pursuing the contractual remedy would be futile. *See Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842

ed exercise of discretion.

(1967) (stating that a union member may bring suit when the union has the sole power under the contract to invoke the higher stages of the grievance procedure, and the member is prevented from exhausting his or her contractual remedies by the union's wrongful refusal to process a grievance); *Glover v. St. Louis–San Francisco Ry. Co.*, 393 U.S. 324, 330–31, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969) (observing that discrimination against employees by both the union and the employers made pursuit of contractual remedies "wholly futile"); *American Fed'n of Gov't Employees v. Paine*, 436 F.2d 882, 896 (D.C.Cir.1970) ("[T]he exhaustion requirement contemplates an efficacious administrative remedy, and does not obtain when it is plain that any effort to meet it would come to no more than an exercise in futility.").

In *Winslow*, which was a case somewhat analogous to this one, the Intermediate Court of Appeals (the ICA) declared that, where a collective bargaining agreement provides that only a union may exercise the ultimate grievance step of requesting arbitration, the employee is bound thereby, and if the union elected not to exercise that option, the employee has exhausted his or her administrative remedies.[18] *See* 2 Haw.App. at 55, 625 P.2d at 1051. There, the ICA stated:

> Given the well-settled rule of the doctrine of exhaustion of remedies in administrative law, 2 Am Jur.2d *Administrative Law* § 595; this state's public policy favoring arbitration as a means of settling differences to avoid expensive and unnecessary litigation, *Kendall v. Kauhi*, 53 Haw. 88, 488 P.2d 136 (1971); Rules 52(a) and 56(c), [Hawai'i Rules of Civil Procedure]; and the facts of this case, we find no error in the court's ruling that the State was entitled to summary judgment. Contrary to appellant's contentions, we hold that where the terms of public employment are covered by a collective bargaining agreement pursuant to HRS [c]hapter 89 and the agreement includes a grievance procedure to dispose of employee grievances against the public employer, an aggrieved employee is bound by the terms of the agreement. *Here the grievance procedure consisted of five steps with the fifth step final and binding arbitration. At steps one through four, either the employee or the union could carry forward the grievance; and if the employee did so, only the union has the election to take the matter to arbitration (step 5). If the union elected not to go to arbitration, the employee would then have exhausted her administrative remedies and could have brought the employer into court.*

*Id.* at 55, 625 P.2d at 1050 (emphasis added). However in that case, at step 3, the appellant was advised by the department head to proceed to the step 4 level (appeal to the employer), but with counsel's advice, chose not to do so. *See id.* at 54, 625 P.2d at 1050. Because further contractual remedies existed which were not exhausted by the employee, the court in *Winslow* determined that she had not exhausted her available remedies prior to bringing her employer into court. *See id.* at 55, 625 P.2d at 1050.

**B.**

◼ Here, there was no step beyond Step 3 which Poe could exhaust; under the statutes and terms of the agreement, Poe had taken the process as far as he was able. The HGEA was aware of Poe's grievance and chose not to involve itself in his individual grievance. As the HLRB found, Poe requested that the HGEA represent him and the Controllers as a class. The HGEA was afforded the opportunity to be present at the meetings between Poe and the Employer. *See* HRS § 89–8(b) discussed *infra* Part X. However, the HGEA did not respond to the

---

18. The rule of exhaustion of administrative remedies is supported by sound policy. In *Hokama*, this court explained that

> [s]trong policy considerations support [the] rule [that an employee must exhaust any grievance or arbitration procedures provided under a collective bargaining agreement before bringing a court action pursuant to the agreement]. The exhaustion requirement, first, preserves the integrity and autonomy of the collective bargaining process, allowing the parties to develop their own uniform mechanism of dispute resolution. It also promotes judicial efficiency by encouraging the orderly and less time-consuming settlement of disputes through alternative means.

92 Hawai'i at 272, 990 P.2d at 1154 (internal citations omitted.)

request or participate. Instead, the HGEA apparently engaged in independent negotiations on the subject matter directly with the Employer.

Nothing in the statutes or the agreement requires Poe to file an intra-HGEA appeal in order to acquire the right to bring his prohibited practice claim to the HLRB. Under such circumstances, it is evident that HGEA, as Poe's representative, had eschewed any involvement in Poe's individual grievance, much less an election to proceed to Step 4 arbitration on Poe's behalf. The sole power to proceed to arbitration rested with the HGEA. As *Winslow* suggested, when only the exclusive bargaining representative can elect to advance to the final grievance step, the employee exhausts his or her remedies at the point in the grievance procedure where the employee can no longer progress. *See* 2 Haw.App. at 55, 625 P.2d at 1050. Because Poe could move no further in the grievance procedure, he had exhausted his administrative remedies. Requiring him to repeatedly request the HGEA to pursue his grievance would be futile. Thus, the HLRB was wrong in concluding that Poe had failed to exhaust his administrative remedies. *See id.* at 56, 625 P.2d at 1051 ("[W]e hold that appellant could not be required to exhaust contractual remedies in an action against the union where no such remedies actually exist.")

## C.

As to Poe's fourth question, we conclude that the HLRB's finding that the DOT and the HGEA were engaged in discussions to resolve the Article 21 dispute on behalf of all Controllers was not clearly erroneous.[19] There was substantial evidence to support this finding.[20] *See Protect Ala Wai Skyline v. Land Use and Controls Comm. of City Council of City and County of Honolulu,* 6 Haw.App. 540, 547, 735 P.2d 950, 955 (1987) ("[T]he law does not require that all the evidence put before an administrative agency must support the agency's findings. It is legally sufficient if the findings are supported by reliable, probative, and substantial evidence in the whole record." (Citing HRS § 91–14(g)(5); *Camara v. Agsalud,* 67 Haw. 212, 685 P.2d 794 (1984).)), *overruled on other grounds by GATRI v. Blane,* 88 Hawai'i 108, 114, 962 P.2d 367, 373 (1998).

Poe's June 17, 1998 letter requested HGEA to represent the Controllers. On July 19, 1998, Poe informed DOT that HGEA had not responded to his June 17 letter. In his letter of September 23, 1998, the Director of the DHRD informed Poe that the DOT and the HGEA were engaged in discussions concerning Article 21. The same representation was contained in the Director's January 22, 1999 letter to Poe. In that regard, we agree with the Employer that there is nothing Poe presents that prohibits discussions between the Employer and the employee's exclusive bargaining representative as to such matters,[21] although the rest period matter may have first been raised in Poe's individual grievance.

## VIII.

While the HLRB was incorrect in ruling that Poe had failed to exhaust his administra-

19. We agree with Employer's contention that Poe "is inaccurate in stating that [HLRB] found there was a class grievance." The HLRB's findings did not refer to a "class *grievance.*" The HLRB in fact found that it was "undisputed that HGEA [was] involved in attempting to reach a resolution of the rest periods issue on behalf of all the affected employees with the Employer."

20. We note that, in its findings, the HLRB thoroughly discussed the various letters sent among the parties regarding the alleged rest period violation, reflecting the HLRB's proper consideration of the evidence before it.

21. Employer cites to HRS § 89–9(a) and HRS § 89–9(c). HRS § 89–9(a) (1993) requires bargaining over "[t]erms and conditions of employ-

ment which are subject to negotiations under this chapter and which are to be embodied in a written agreement, or any question arising thereunder, but such obligation does not compel either party to agree to a proposal or make a concession." HRS § 89–9(c) (1993) states in part that

[e]xcept as otherwise provided herein, all matters affecting employee relations, including those that are, or may be, the subject of a regulation promulgated by the employer or any personnel director, are subject to consultation with the exclusive representatives of the employees concerned. The employer shall make every reasonable effort to consult with the exclusive representatives prior to effecting changes in any major policy affecting employee relations.

tive remedies, we conclude that, under the undisputed material facts of this case, Poe was not entitled to any relief under the cited statutes or the agreement provisions relied on. *See* Sections IX. to XII., *infra*. Hence, as to Poe's third question, we discern no violation of (1) HRS § 89–8(b), relating to an employee's right to "present a grievance at any time to the employee's employer and have the grievance heard without intervention of the employee organization," or (2) HRS § 89–11(a), relating to a party's right to "submit [a] dispute to the board for a final and binding decision" where there is no "written agreement with the exclusive representative of an appropriate bargaining unit setting forth a grievance procedure." There was, then, no violation of HRS § 89–13(a)(7) and (8), relating to an employer's "refus[al] or fail[ure] to comply with" the collective bargaining statutes or a "violat[ion of] the terms of a collective bargaining agreement." It follows from the foregoing that the general statement of the purposes of HRS chapter 89, contained in HRS § 89–1, was not contravened. In sum, the Employer did not violate any individual employee grievance rights protected by the cited statutes or the agreement provisions mentioned.

### IX.

■ HRS § 89–11(a) authorizes a "dispute concerning the interpretation or application of a written agreement" to be submitted to "a[n agreed] grievance procedure culminating in a final and binding decision" or, "[i]n the absence of such a procedure," "to the [HLRB] for a final and binding decision." Although allowance for an agreement or, in the absence of one, for submission of a dispute to the board is permitted, such allowance is granted only as between "a public employer" or "the exclusive representative of an appropriate bargaining unit." *Id.* Obviously, Poe is not such a representative of a unit and, thus, HRS § 89–11(a) does not confer any right to submit his dispute to an agreed procedure or to the board for a final and binding decision. *See also* discussion *infra* on HRS § 89–8(b). Therefore, the HLRB was correct in dismissing this claim, and there was no HRS § 89–13(a)(7) prohib-

ited practice refusal or failure to comply with HRS chapter 89 by the Employer.

### X.

■ HRS § 89–8(b) provides that "[a]n individual employee may present a grievance . . . to the employee's employer and have the grievance heard without intervention of an employee organization." Hence, HRS § 89–8(b) grants an individual employee, in his or her own capacity, the right (1) to present a grievance to the employer and (2) to have the grievance heard by the employer "at . . . conferences." The statute, by its terms, however, does not require the employer to proceed beyond these two stages.

■ In that regard, we observe that, in enacting chapter 89, the legislature reaffirmed the right of any person to refrain from joining an employee organization, *see* HRS § 89–3 (1993); Stand. Comm. Rep. No. 752–70, in 1970 House Journal, at 1165, but also directed that all employees would be represented by the exclusive representative, *see id.* ("While an employee may refrain from joining an employee organization, he [or she] cannot refuse to be represented by the exclusive representative."). In providing for exclusive representation, the legislature intended that collective bargaining by the employee organizations would prevail over that of any unilateral arrangement by the employer with any individual employee. "[A]ny collective bargaining law enacted should clearly specify the areas and manner in which public employees *shall* bargain collectively[.]" Conf. Comm. Rep. No. 24, in 1970 House Journal, at 1262 (emphasis added). In effect, then, in HRS § 89–8(b), the legislature implemented a limited grievance procedure that allows employees some avenue in resolving disputes with their employers individually. Beyond that, however, HRS § 89–8(b) does not impose any obligation on the part of the employer beyond receiving, hearing, and responding to the grievance.

■ Under the facts found, Poe presented his grievance to the Employer, was heard with respect thereto, and was notified that "the remedy [he] sought as an individual" was denied. Accordingly, the Employer did

not violate HRS § 89–8(b) and the HLRB was correct in determining that, on the relevant undisputed facts, the Employer was entitled to summary judgment. There was, thus, no HRS § 89–13(a)(7) or HRS § 89–13(a)(8) prohibited practice violation of the agreement.

## XI.

■ In a similar vein, the instant agreement does not provide for any grievance procedure to be taken by an individual employee beyond Step 3, that is, an appeal to the Employer. After Step 3, the resolution of a grievance must be pursued by the exclusive representative, if it chooses to do so, through the arbitration process in Step 4. Nothing in Step 4 permits an employee to continue the matter into arbitration; rather, further resolution of the matter, if any, is left to the employee's exclusive representative, in this case, HGEA.[22]

■ Under the undisputed facts, Poe's grievance was processed through the steps prescribed for individually-commenced grievances. Hence, there was no violation of Article 11 of the agreement so as to raise a HRS § 89–13(a)(8) prohibited practice violation of the agreement.

## XII.

■ Finally, we observe that HRS § 89–1, the statement of policy, does not impose rights or duties upon which an enforceable claim will lie. The general rule of statutory construction is that policy declarations in statutes, while useful in gleaning the purpose of the statute, are not, of themselves, a substantive part of the law which can limit or expand upon the express terms of the operative statutory provisions. *See Puget Soundkeeper Alliance v. State, Dept. of Ecology,* 102 Wash.App. 783, 9 P.3d 892, 895–96 (2000) (observing that, while "[u]ndeniably, Congress' strong state-

ment of its objective must color the [Environmental Protection Act]'s and our interpretation of specific provisions of the Act[,]" but "[a]lthough declarations of policy in an act serve as an important guide to the meaning of the operative sections, they have no operative force in and of themselves"). Thus, as one court noted,

> [w]hile some statutes have a policy section and some have a preamble, the effect to be given these provisions is the same: they provide guidance to the reader as to how the act should be enforced and interpreted, but they are not a substantive part of the statute. They may be used to clarify ambiguities, but they do not create rights that are not found within the statute, nor do they limit those actually given by the legislation.

*Price Dev. Co., L.P. v. Orem City,* 995 P.2d 1237, 1246 (Utah 2000) (citing Norman J. Singer, *Sutherland Statutory Construction* §§ 20.03, 20.12 (5th ed.1993)); *see also Ederer v. Board of Zoning Appeals,* 18 Ohio Misc. 143, 248 N.E.2d 234, 237 (Ct.Comm.Pl.1969) (stating that "[s]ection 1337.01 of [the zoning] chapter declares the chapter's purpose, and as such is no more than a preamble, setting forth the legislative intent and purpose for the enactments that thereafter follow[,]" and, hence, "[w]hile the purpose clause, so-called, of a statute or ordinance may be, and frequently is, used in determining legislative intent for the purposes of judicial interpretation and construction, it is not the law, and accordingly, such clause, as in the instant case, may not be read or construed as a limitation or restriction on the land use within in a district or area created by zoning classification").

■ Therefore, the broad policy statements within HRS § 89–1, entitled "Statement of findings and policy," do not impose binding duties or obligations upon any parties but, rather, provide a useful guide for determining legislative intent and purpose.

---

**22.** As previously indicated, while an employee may pursue a grievance in his or her own stead, rather than through the exclusive representative of the employee's bargaining unit, the representative must be "afforded the opportunity to be present at . . . conferences" between the employee and the employer. HRS § 89–8(b). Read in conjunction with HRS § 89–11(a), this provision allows the exclusive representative not only the right to monitor the status of any individual grievance in light of the terms of the agreement, but also to exercise the discretion to pursue or not pursue the grievance raised by the individual employee in HRS § 89–11(b) proceedings.

These statements, therefore, do not implicate the prohibited practice provision of "[r]efus[ing] or fail[ing] to comply with any provision of [HRS] chapter [89]," as set forth in HRS § 89–13(7). Hence, Poe's claim that the Employer violated HRS § 89–1 was properly dismissed.

### XIII.

Given the statutory framework for taking grievances to a public employer and the agreement in this case, Poe's complaint was correctly denied.[23]   For the foregoing rea-

sons, there was no reversible error committed by the HLRB in its June 15, 1999 order, and the court was correct in affirming the HLRB's order by its December 15, 1999 order and the January 21, 2000 judgment entered thereon.

---

23.   As noted earlier, the HLRB advised that Poe's recourse in the face of HGEA's apparent decision not to seek arbitration in Step 4 is to proceed against his union on the theory that it breached its duty of fair representation.   The question of potential recourses for Poe is not before us, and we express no opinion as to that matter.