**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000847
18-MAR-2026
07:50 AM
Dkt. 90 SO**

NO. CAAP-24-0000847

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF L CHILDREN

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-S NO. 21-0005)

SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, and Wadsworth and McCullen, JJ.)

Mother-Appellant (**Mother**) appeals from the Order Terminating Parental Rights (**TPR Order**) entered on November 29, 2024, by the Family Court of the Third Circuit (**Family Court**).[1] The TPR Order, among other things, terminated Mother's parental rights to her minor children, L.L., J.L., M.L., C.L., and S.L. (together, the **Children**). Mother also challenges certain findings of fact and conclusions of law in the Family Court's September 11, 2025 Findings of Fact and Conclusions of Law (**FOFs/COLs**).

Mother contends that: (1) the Family Court clearly erred in finding that Mother could not provide the Children a safe family home; (2) DHS failed to make reasonable efforts to reunify Mother and the Children; (3) the Family Court failed to properly consider guardianship; (4) the Family Court's best interests determination was "flawed"; and (5) "[t]ime in [c]are

_____

[1] The Honorable Darien W.L. Ching Nagata presided.

[i]s [r]elevant but [n]ot [d]eterminative of [t]ermination."[2/]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Mother's contentions as follows, and affirm.

(1) and (5) Mother contends that the Family Court's findings that she could not provide a safe family home now or in the foreseeable future "are contradicted by the record." Mother argues that she "maintained continuous sobriety for over eighteen months," completed substance abuse treatment and parenting classes, and "consistently visited her children and progressed to partially unsupervised visits . . . ." She claims that DHS "fail[ed] to tailor services" to her "demonstrated progress." Separately, she argues that the TPR Order "was largely based on the [C]hildren's extended time in foster care, rather than a balanced assessment of Mother's progress" and that "preset timelines" drove DHS's permanency recommendations.

HRS § 587A-33(a) (2018), part of the Child Protective Act (**CPA**), governs the termination of parental rights. It provides, in pertinent part:

> **Termination of parental rights hearing.** (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> (1) A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
>
> (2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care[.]

The Hawaiʻi Supreme Court has defined a safe family home as "a

---

[2/] The numbered FOFs and COLs listed in the "Points of Error" section of Mother's Abbreviated Opening Brief do not correspond to Mother's written descriptions of them. We therefore address the challenged FOFs and COLs based on Mothers written descriptions rather than her incorrect numerical references.

family home in which the child's parents or legal custodian can adequately provide for the child's physical and psychological health and welfare and thereby adequately protect the child from harm, be it actual, imminent, or threatened." In re Doe, 95 Hawaiʻi 183, 194, 20 P.3d 616, 627 (2001).

Here, when trial started, the Children had been in foster care for three years and four months.

As to Mother's present willingness and ability to provide a safe family home, the Family Court found, and Mother does not contest, that she was unable to maintain stable housing throughout the period the Children had spent in foster care. See In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002) (unchallenged findings of fact are binding on appeal (quoting Poe v. Hawaii Labor Relations Bd., 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002))). At the time of trial, Mother was temporarily living alone at her own mother's home. Mother testified that the home was not suitable even for one child as she did not have a room or separate area for visits.

The Family Court also found, and Mother does not contest, that she had not had visits with the four older children since July of 2021. See In re Doe, 99 Hawaiʻi at 538, 57 P.3d at 463. At first, supervised visits occurred, but due to Mother's inconsistent visits and issues at the visits, such as Mother's intoxication, visits were suspended. At the time of trial, Mother had made progress in services and sobriety, but the four older children still clearly expressed that they did not want visits with Mother – another finding that she does not contest. See id.

Further, Mother testified that she continued to smoke cannabis daily to cope with panic attacks and complex trauma dating back to early adulthood, and was considering a residential treatment program to address her use of cannabis. She stated that her panic disorder "flares up" when she tries to stop smoking cannabis.

DHS social worker Albert Pacheco, Jr. (**Pacheco**) testified that despite Mother's progress in achieving sobriety from alcohol, Mother's mental health remained "fragile" and it

would take "at least a year" for her to "be better."

The Family Court found Pacheco's testimony to be credible. The Family Court found that Mother's statement that she could provide a safe family home for the Children was not credible, based on otherwise credible testimony from Mother about her housing situation, mental health issues, and cannibis use to cope with past traumatic events.

Mother argues that DHS, by repeating service plan requirements such as those for substance abuse, psychological evaluation and parenting classes "continued to recommend the same generic services without adapting them to Mother's demonstrated progress." Her argument assumes, however, that she had completed her recovery from substance abuse and trauma and acquired sufficient parenting skills to warrant the removal or substitution of the prescribed services and classes. The record does not support this assumption.

As to whether Mother will become willing and able to provide a safe family home in the foreseeable future, it is undisputed that the Children had been in foster care for more than three years when trial began. Mother was therefore plainly unable to show that it was reasonably foreseeable that she would become able to provide a safe family home, even with the assistance of a service plan, "within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care." HRS § 587-33(a)(2). "Two years is the maximum, not minimum, amount of time within which a parent must become willing and able to provide a safe family home." In re AK, No. CAAP-21-0000455, 2022 WL 1134991, at *3 (Haw. App. Apr. 18, 2022) (SDO).

We conclude that clear and convincing evidence supported the Family Court's "safe family home" determinations, as reflected in FOFs 74, 104 and 105, and COLs 12 and 13. The Family Court did not clearly err in determining that Mother is not presently willing and able to provide the Children with a safe family home, even with the assistance of a service plan, and it is not reasonably foreseeable that she will become willing and able to do so within a reasonable period of time.

4

(2) Mother contends that the Family Court erred in finding that DHS made reasonable efforts to reunify Mother and the Children. She argues that DHS made only "generic service recommendations, fail[ed] to provide therapeutic visits, and reli[ed] on minimal contact with providers."

"DHS is under an obligation to provide a reasonable opportunity to parents through a service plan to reunify the family." In re Doe, 100 Hawaiʻi 335, 343, 60 P.3d 285, 293 (2002). As the Family Court noted, however, this requirement is qualified by the paramount concern of the CPA, which is the health and safety of the child, and the CPA is to be liberally construed to serve the best interests of the child. See HRS § 587A-2; In re Doe, 101 Hawaiʻi 220, 228, 65 P.3d 167, 175 (2003).

Here, FOFs 110 through 114 discuss DHS's reasonable efforts to reunify Mother with the Children. The Family Court gave due weight to DHS's undisputed reunification efforts in the case, which appear to have been undermined not by any failure of DHS, but by Mother having showed up to visits intoxicated or having missed visits altogether. Indeed, it appears that Mother's conduct led to the suspension of visits and the four older Children expressing that they did not want visits with Mother.

The Family Court found, and Mother does not contest, that DHS treated Mother "fairly and serviced the entire family intensely" from the start of the DHS and court intervention. See In re Doe, 99 Hawaiʻi at 538, 57 P.3d at 463. On this record, we conclude that clear and convincing evidence supported FOFs 110 through 114. They are not clearly erroneous.

(3) and (4) Mother contends that the Family Court failed to properly consider guardianship and, relatedly, that the court's best interests determination was "[f]lawed." Mother argues that guardianship was supported by the Children and accepted by Mother. She further argues that legal guardianship would have better preserved sibling bonds and was therefore in the Children's best interests.

When creating a permanent plan, HRS § 587A-32(a)(3) requires DHS to document "[a] compelling reason why legal guardianship or permanent custody is in the child's best interests if adoption is not the goal[.]" There is no converse requirement for DHS to document reasons that adoption is preferable to either guardianship or permanent custody. Neither HRS § 587A-32 nor § 587A-33 requires the Family Court to consider other permanency plan options when adoption is the recommended goal.

Although the parties may have reached a tentative agreement at one point for legal guardianship for the Children, DHS's focus shifted to adoption as the Children's need for a more permanent resolution became clear. Pacheco opined as a child protective and welfare services expert that adoption was the most permanent option and provided the most stability for the Children.

Mother suggests guardianship would better preserve sibling bonds and cites the Children's desire to remain in close contact with one another as the reason they were at one point willing to back a permanent plan that called for guardianship. However, the Guardian Ad Litem reports to the Family Court show that the Children's primary motivation in considering guardianship was to ensure that the youngest sibling, who desired more or longer visits with Mother, would not be returned to Mother's custody. Mother points to no evidence that the Children, who regularly enjoyed visits with one another, would have lost the opportunity to maintain those ties as a result of adoption as opposed to legal guardianship.

Mother contends that L.L., who was over the age of 14 at the time of trial, "executed written consent to guardianship to avoid excluding a sibling." L.L., however, signed a consent form supporting the May 10, 2024 Permanent Plan recommending adoption. No consent form was included with an earlier Permanent Plan that had recommended guardianship. In FOF 81(e), which Mother does not contest, the Family Court found that "On May 10, 2024, [L.L.] signed a consent form, consenting to the permanent plan dated May 10, 2024, which calls for termination of parental

rights and adoption." See In re Doe, 99 Hawaiʻi at 538, 57 P.3d at 463.

On this record, we conclude that clear and convincing evidence supported the Family Court's determination that adoption was in the Children's best interests, as reflected in FOF 108 and COLs 16 and 17. This determination and the related FOFs are not clearly erroneous.

For the reasons discussed above, the Order Terminating Parental Rights entered on November 29, 2024, by the Family Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, March 18, 2026.

On the briefs:

Jacob G. Delaplane
for Mother-Appellant.

Kenneth G. Goodenow,
Julio G. Herrera,
Kurt Shimamoto, and
Kellie M. Kersten,
Deputy Attorneys General,
for Petitioner-Appellee.

Valerie J. Grab
(The Children's Law Project of
Hawaiʻi),
Court-appointed Guardian Ad
Litem

/s/ Karen T. Nakasone
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge