223 P.3d 236

**HUI MALAMA I NA KUPUNA O NEI, a Hawai'i nonprofit corporation; Paulette Ka'anohiokalani Kaleikini, Plaintiffs–Appellants,**

v.

**WAL–MART, a Delaware corporation doing business in Hawai'i; State Of Hawai'i; Peter Young, in his official capacity as the Director of the Department of Land and Natural Resources of the State of Hawai'i; Department Of Land And Natural Resources; State Historic Preservation Division; Holly McEldowney, in her official capacity as the Acting Administrator of the State Historic Preservation Division of the Department of Land and Natural Resources; City and County of Honolulu; Department of Planning and Permitting for the City and County of Honolulu; Eric G. Crispin, in his official capacity as the Director of the Department of Planning and Permitting for the City and County of Honolulu, Defendants–Appellees,**

and

**John Does 2–10; Jane Does 1–10; Doe Corporations, Partnerships, Governmental Units, or Other Entities 4–20, Defendants.**

**No. 28477.**

Intermediate Court of Appeals of Hawai'i.

Dec. 16, 2009.

---

Alan T. Murakami and Moses K.N. Haia, III, (Native Hawaiian Legal Corporation), Honolulu, on the briefs, for Plaintiffs–Appellants.

Lori K.K. Sunakoda, Deputy Corporation Counsel, City and County of Honolulu, for Defendants–Appellees City and County of Honolulu, Department of Planning and Permitting, on the briefs, for the City and County of Honolulu, and Henry Eng.

WATANABE, PRESIDING J., FOLEY, and LEONARD, JJ.

Opinion of the Court by WATANABE, Presiding J.

This appeal stems from the inadvertent discovery of forty-two sets of human skeletal remains (human remains) on the site of a commercial construction project in urban Honolulu. The sole issue presented is the correct interpretation of Hawaii Revised Statutes (HRS) § 6E–42 (Supp.2008), which provides currently, as it did when the human remains were discovered, as follows:

> **Review of proposed projects.** (a) Before any agency or officer of the State or its political subdivisions approves any project involving a permit, license, certificate, land use change, subdivision, or other entitlement for use, *which may affect historic property*, aviation artifacts, *or a burial site*, the agency or office shall advise the department [of land and natural resources] and prior to any approval allow the department an opportunity for review and comment on the effect of the proposed project on historic properties, aviation artifacts, or

burial sites, consistent with section 6E–43, including those listed in the Hawaii register of historic places.

(b) The department shall inform the public of any project proposals submitted to it under this section which are not otherwise subject to the requirement of a public hearing or other public notification.

(Emphases added.)

Plaintiffs–Appellants Hui Malama I Na Kupuna O Hawai'i Nei, a Hawai'i non-profit corporation, and Paulette Ka'anohiokalani Kaleikini (collectively, Plaintiffs) contend that the foregoing statute required Defendants–Appellees City and County of Honolulu (City), City Department of Planning and Permitting (DPP), and former DPP director Henry Eng, FAICP (collectively, City Defendants) to seek review and comment from the State Historic Preservation Division (SHPD) of the State of Hawai'i Department of Land and Natural Resources (DLNR) on the effect of the project on historic properties or burial sites before granting grubbing, grading, and building-permit applications for the project.

The Circuit Court of the First Circuit[1] (circuit court) held that the statute requires a permitting agency to seek SHPD's review and comment only when it "knows, or has reason to suspect, that the project may impact a burial or other historic site[.]" As there was "no evidence that the City Defendants knew of or should have known" that a burial site existed on the property, the circuit court ruled that the City Defendants did not violate the statute.

We affirm.

**BACKGROUND**

The facts of this case are undisputed.[2] In May 2002, the Wal–Mart Real Estate Business Trust (Wal–Mart) purchased an approximately 10.5–acre parcel of land in Honolulu, designated as Tax Map Key Nos. (1)2–3–16:09 & 43 and bounded by Ke'eaumoku, Sheridan, and Makaloa streets (Property),

for its planned construction of a retail complex that included a Wal–Mart store and a Sam's Club store (Wal–Mart Project). The Property, originally brackish-water marshlands, had been filled and extensively developed and used by commercial and industrial tenants for at least fifty years. By the time Wal–Mart purchased the Property in 2002, all the structures on the Property had been razed to make way for future development and the Property had been sitting vacant for nearly a decade.

Over that decade, multiple environmental, archaeological, and other assessments of the Property had been conducted and documented for either the Wal–Mart Project or other proposed developments on or near the Property. These assessments included numerous subsurface excavations, borings, and testing. None of these assessments indicated that significant burial or historic sites may exist on the Property.

Additionally, SHPD had previously advised that proposed developments for portions of the Property would either have no effect or were unlikely to have an adverse effect on significant historic sites. Notably, in 1990, SHPD was asked by DPP to comment on an application by HASEKO (Hawaii) Inc. for a development plan land-use-map amendment to close Kamaile Street between Ke'eaumoku and Sheridan streets within the Property. SHPD's then-director stated:

> This is in response to your ... request to close Kamaile Street between Keeaumoku and Sheridan Streets. *Old maps of the Kamaile Street area indicate that it was a marsh and now the soil consists of fill. Thus, we believe that the proposed development will have "no effect" on significant historic sites,* but we believe that any initial grading below the street level should be monitored by an archaeologist to verify the marsh pattern[.]

(Emphasis added.) In 1999, SHPD issued the following comment regarding a conditional-use-permit application for the proposed

1. The Honorable Victoria S. Marks presided.

2. Plaintiffs have not challenged any of the findings of fact entered by the circuit court in this case. "If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid." *Wisdom v. Pflueger,* 4 Haw.App. 455, 459, 667 P.2d 844, 848 (1983).

construction of the Kapiolani Akahi Continuing Care Retirement Community Building on the southwest corner of the Property:

> Our review is based on historic reports, maps, and aerial photographs maintained at the [SHPD]; no field inspection was made of the subject parcels.

> A review of our records shows that there are no known historic sites at the project location. Although no archaeological survey has been conducted for these parcels, historic maps for the area and data obtained from archaeological investigations conducted in nearby parcels indicates that traditionally the project area probably consisted of a brackish water marshlands with little possibility of containing significant archaeological resources. Nonetheless, human remains were found during trenching for telephone lines near the corner of Piikoi Street and Kapiolani Boulevard. These remains appear to be an isolated find.

> *Because no surface remains are known to exist on the parcels (previously cleared and vacant), and because of the low potential for finding subsurface cultural deposits, we believe that this project will have "no effect" on historic properties.*

> In the unlikely event that historic sites, including human burials, are uncovered during routine construction activities, all work in the vicinity must stop and the [SHPD] must be contacted[.]

(Emphasis added.)

In 2000, Wal–Mart retained a consultant to prepare an archaeological assessment for the Property. Based on extensive research and analysis, the consultant submitted an archaeological assessment of the Property in September 2000. In September 2002, Wal–Mart voluntarily submitted to SHPD an "Archaeological Monitoring Plan for the Proposed Wal–Mart/Sam's Club Development Area Kalia, Makiki, Kona, O'ahu[.]" Although Wal–Mart's own assessment did not suggest that the Property contained a burial site, Wal–Mart's archaeologist nevertheless recommended archaeological monitoring during construction and submitted the monitoring plan to SHPD, "based on the large size of the area and the lack of knowledge regarding the nature and extent of original ground surface preparation prior to deposition of the dredged fill materials" and because "some remains may potentially still be present below the fill deposited during the reclamation project [of the 1920's]."

By letter dated October 9, 2002, SHPD responded to Wal–Mart, in relevant part, as follows:

> *We question the need for on-site archaeological monitoring throughout the project area.* According to your archaeological assessment of the project area . . ., it seems that *extensive, prior land alterations and subsequent filling have greatly altered most if not all of the subject parcels.* The only area with potential for subsurface finds appears to be the *northern portion* of the development area (labeled as Zone 1 . . .). This is the former location of the settlement known as "Little Britain," occupied after the 1850's until the early 20th century. Judging from the soil borings and profiles included with the subject plan . . ., it appears that Zone 1 may have fill deposits extending from three to eight feet in depth although it is uncertain that the fill is uniform in deposition. It is possible, however, that excavations penetrating the fill may have an "adverse effect" on buried historic sites and deposits in this area. Consequently, we recommend that the following revisions be made to the subject plan:

> In the section on the Monitoring Plan, we recommend the following changes (new language indicated by underlining):

> Paragraph 1: . . . Thus, in view of the presence of 3–8 feet of secondarily deposited dredged corraline fill, all construction-related excavations <u>only in the area known as Zone 1</u> shall be monitored in accordance with [SHPD] Regulations contained in Chapter 6E of [HRS]. <u>If, prior to completion of construction excavations in Zone 1, the monitor notes only the presence of fill soils to the maximum depths of excavation, on-site monitoring shall cease, after notification to [SHPD]</u>.

> . . . .

.... [I]f these changes are made, and if the subject plan is implemented as amended, then *we believe that the proposed construction of a Sam's Club and Wal–Mart complex will have "no adverse effect" on significant historic sites.*

(Italicized emphases added.)

In November 2002, DPP issued grading and building-foundation permits for the Wal–Mart Project. DPP did not advise and seek review and comment from SHPD before issuing the permits because DPP determined that the Property was not likely to affect historic property or burial sites. DPP based its determination partly on a search of POSSE,[3] a comprehensive computer database storage and access system which includes (1) information on properties listed on the National and/or Hawai'i Historic Site Registers and (2) the locations of known burial and or archaeologically significant sites, as provided by DLNR. This search revealed that the Property was not listed on the National and/or Hawai'i Historic Site Registers and did not contain known burial or archaeologically significant sites. DPP's determination was also based on DPP records, which indicated that the Property had been extensively developed and used for commercial and industrial purposes for over fifty years.

Wal–Mart began clearing and grading the Property after the permits were issued. From January 2003 through January 2004, however, forty-two sets of human remains were discovered: forty sets were discovered on the southwest portion and two sets, on the northwest portion of the Property. All the remains were determined to be over fifty years old, and several were presumed to be native Hawaiian because they were buried in a flexed position, a customary native Hawaiian burial practice in the prehistoric and early historic period. Pursuant to HRS § 6E–43.6 (1993 & Supp.2008),[4] the remains

---

**3.** POSSE is an acronym for Public One Stop Service.

**4.** HRS § 6E–43.6 provides as follows:

**Inadvertent discovery of burial sites.** (a) In the event human skeletal remains are inadvertently discovered, any activity in the immediate area that could damage the remains or the potential historic site shall cease until the requirements of subsections (b) to (d) have been met.

(b) The discovery shall be reported as soon as possible to the department [of land and natural resources], the appropriate medical examiner or coroner, and the appropriate police department. As soon as practicable, the department shall notify the appropriate [island burial] council and the office of Hawaiian affairs.

(c) After notification of the discovery of multiple skeletons, the following shall be done within two working days, if on Oahu, and three working days, if in other council jurisdictions:

(1) A representative of the medical examiner or coroner's office and a qualified archaeologist shall examine the remains to determine jurisdiction. If the remains are the responsibility of the medical examiner or coroner, the department's involvement shall end. If the remains are historic or prehistoric burials, then the remainder of this section shall apply;

(2) The department shall gather sufficient information, including oral tradition, to document the nature of the burial context and determine appropriate treatment of the remains. Members of the appropriate council shall be allowed to oversee the on-site examination and, if warranted, removal; and

(3) If removal of the remains is warranted, based on criteria developed by the department, in consultation with the councils, office of Hawaiian affairs, representatives of development and large property owner interests, and appropriate Hawaiian organizations, such as Hui Malama I Na Kupuna O Hawai'i Nei, through rules adopted pursuant to chapter 91, the removal of the remains shall be overseen by a qualified archaeologist and a mitigation plan shall be prepared by the department or with the concurrence of the department.

(d) In cases involving the discovery of a single skeleton, the requirements of subsection (c) shall be fulfilled in one working day if on Oahu, and two working days if in other council jurisdictions.

(e) The mitigation plan developed by or with the concurrence of the department pursuant to subsection (c)(3) shall be carried out in accordance with the following:

(1) In discoveries related to development where land alteration project activities exist, the landowner, permittee, or developer shall be responsible for the execution of the mitigation plan including relocation of remains. Justifiable delays resulting from the discovery of burials shall not count against any contractor's completion date agreement;

(2) Project activities shall resume once necessary archaeological excavations provided in the mitigation plan have been completed;

(3) In nonproject contexts, the department shall be responsible for the execution of the

were classified as inadvertent discoveries of historic remains. Thereafter, SHPD, following the unanimous recommendation of the Oʻahu Island Burial Council, directed that the remains be relocated and reburied on the Property.

On March 8, 2004, Plaintiffs filed their first amended complaint against City Defendants; Wal–Mart, a Delaware corporation doing business in Hawaiʻi; State of Hawaiʻi; Peter Young (Young), in his capacity as director of DLNR; DLNR; SHPD; and Holly McEldowney (McEldowney), in her official capacity as acting administrator for the SHPD (Young, DLNR, SHPD, and McEldowney hereinafter, collectively, State Defendants, and Wal–Mart, City Defendants, and State Defendants hereinafter, collectively, Defendants).[5] The first amended complaint alleged, among other claims, that City Defendants had "violated [HRS § ]6E–42 and applicable administrative rules by approving [Wal–Mart's] grubbing, grading and other permit applications . . . without first seeking and obtaining the comments of Defendant SHPD." The first amended complaint requested "a judgment declaring that [City Defendants] violated [HRS § ]6E–42(a) and such violation renders [Wal–Mart's] grubbing, grading and other permits null and void[,]" and "a judgment enjoining [Wal–Mart] from engaging in further construction activities at its Keʻeaumoku Street construction site."

On April 23, 2004, Plaintiffs filed a second motion for preliminary injunction[6] (2nd MPI) pursuant to HRS § 6E–13(b) (1993 & Supp.2008),[7] seeking an injunction against Defendants to prevent the removal and relocation of any and all human remains until the circuit court issued a ruling on the claims in Plaintiffs' first amended complaint.

On May 18, 2004, Plaintiffs and City Defendants stipulated to the following:

1. On or about November 15, 2002, [DPP] issued a grading permit for the Honolulu Central Sam's Club and Wal–Mart development proposed for the Keeaumoku Superblock . . . (the "Project Site").

2. As part of its review for the grading permit, DPP's Site Development Division researched the Project Site utiliz-

mitigation plan and the relocation of remains; and
(4) The department shall verify the successful execution of the mitigation plan.
(f) In cases where remains are archaeologically removed, the department shall determine the place of relocation, after consultation with the appropriate council, affected property owners, representatives of the relevant ethnic group, and any identified lineal descendants, as appropriate. Relocation shall conform with requirements imposed by the department of health, and may be accompanied by traditional ceremonies, as determined by the lineal descendants, or, if no lineal descendants are identified, the appropriate council or representatives of the relevant ethnic group that the department deems appropriate. Specific or special reinterment requests from lineal or cultural descendants may be accommodated provided that the additional expenses incurred are paid by the affected descendants.
(g) If human skeletal remains are discovered in the course of land development or land alteration activities to which section 6E–42 applies, and for which the required approval was not obtained, all activity in the immediate area that could damage the remains or the potential historic site shall cease, and treatment of the remains shall be allowed only in compliance with section 6E–43.

The legislature added subsection (g) pursuant to Act 104, 2003 Haw. Sess. Laws Act 104, § 5 at 208, which became effective on May 30, 2003.

5. Plaintiffs have not appealed the circuit court's disposition of their claims against Wal–Mart and State Defendants, which were either dismissed with prejudice or resolved by summary judgment against Plaintiffs.

6. The circuit court had previously dismissed Plaintiffs' first motion for preliminary injunction, concluding that it did not have primary jurisdiction to hear the matter because SHPD had not yet issued a decision on whether to relocate the remains.

7. HRS § 6E–13 currently provides, as it did when the human remains were discovered, as follows:
   **Injunctive relief. . . .**
   (b) *Any person may maintain an action* in the trial court having jurisdiction where the alleged violation occurred or is likely to occur *for restraining orders or injunctive relief* against the State, its political subdivisions, or any person *upon a showing of irreparable injury, for the protection of* an historic property or *a burial site* and the public trust therein from unauthorized or improper demolition, alteration, or transfer of the property or burial site.
   (Emphases added.)

ing DPP's POSSE computer database. Site Development Examiners are generally trained engineers and land use planners without any formal archeological training.

3. POSSE is an acronym for Public One Stop Service, which is a comprehensive computer database storage and access system.

4. The information contained in POSSE includes whether the Project Site is on the National and/or State Historic Site Register. POSSE information also includes locations of known burial and archeological significant sites as provided by the Department of Land and Natural Resources.

5. POSSE indicated that *the Project Site was not on the National and/or State Historic Site Register, nor did POSSE indicate any known burial or archeological significant sites on the Project Site.*

6. DPP Records indicated that *the Project Site was extensively developed in the past with various commercial and industrial uses for over fifty years.*

7. *Based on the information presented in POSSE and the knowledge that the [Project Site] was extensively developed over the years, DPP determined that the Honolulu Central Sam's Club and Wal–Mart development would not affect or involve historic properties, burial sites, or other archeologically significant sites.*

8. Because DPP determined that the proposed development would not affect or involve any known historic properties, burial sites, or other archeologically significant sites, it did not notify the Department of Land and Natural Resources, Historic Preservation Division prior to issuance of the grading permit.

(Emphases added.)

On July 13, 2004, the circuit court entered "Findings of Fact [ (FsOF) ], Conclusions of Law [ (CsOL) ], and Order Denying [2nd MPI]" (order denying 2nd MPI). After setting forth extensive FsOF regarding the history of the Property and the multiple environmental, archaeological, and other as-

sessments that had been conducted of the Property, the circuit court concluded that DPP did not have reason to suspect that the Property contained historic or burial sites and, therefore, DPP did not violate HRS § 6E–42 when it issued the permits to Wal–Mart without seeking SHPD's prior review and comments. Specifically, the circuit court entered the following CsOL that are relevant to this appeal:

4. The plain language of [HRS § 6E–42] indicates that the agency or officer is only required to give notice to the SHPD if the agency or officer knows, or has reason to suspect, that the project may impact a burial or other historic site that is known to exist in the immediate vicinity of the project site. Interpreting this statute to mean that every State and municipal agency or officer must advise and seek the review and comment of the SHPD on **every** "project involving a permit, license, certificate, land use change, subdivision, or other entitlement for use" **regardless** of whether such project may affect historic properties or burial sites would render the qualifying phrase "which may affect historic property ... or a burial site" superfluous and a nullity.

5. HRS § 6E–42 did not require the DPP to request review of the Project by the SHPD prior to DPP's approval of Wal–Mart's grading and building permit applications because there was no indication at that time that the proposed Project may affect any historic property or a burial site. *See* HRS § 6E–42(a) ("Before any agency or officer of the state ... approves any project involving a permit ... for use, **which may affect historic property** ... or a burial site ... the agency ... shall advise the department ....)" (emphasis added). Consequently, the City Defendants did not violate HRS § 6E–42(a).

(Bolded emphases in original.) The Wal–Mart Project was eventually completed, and on February 22, 2005, DPP issued Wal–Mart a certificate of occupancy for its complex of stores.

On May 31, 2005, City Defendants filed a motion for summary judgment and argued that

Plaintiffs can no longer maintain their cause of action against the City for several reasons. First, this Court has previously considered the evidence and arguments of counsel and has found that the City has not violated HRS Section 6E–42. Second, the Plaintiffs cannot prevail upon their claim for declaratory relief by claiming the issuance of the permits are null and void because the construction of the structure has been completed. Therefore, Plaintiffs' requested relief is now moot. Finally, Plaintiffs do not have standing to assert their claims against the City Defendants.

On October 6, 2005, the circuit court entered FsOF, CsOL, and an order granting City Defendant's motion for summary judgment and directing that the order be certified as final for appeal purposes pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) (2000). The circuit court's findings of fact, which Plaintiffs do not challenge on appeal, noted, in salient part:

> Based on the evidence presented, including the historical development of the Property, and the Stipulation by the Plaintiffs and City Defendants that the City did not have knowledge of the burial site on the Property ..., this Court previously found that despite the City's investigation into the matter, *there is no evidence that the City Defendants knew of or should have known that a burial and/or archeologically significant site was, or could be, on the Property,* and ruled that the City Defendants did not violate HRS Section 6E–42(a).

(Emphasis added.)

The circuit court concluded that its July 14, 2004 order denying 2nd MPI on grounds that City Defendants did not violate HRS § 6E–42(a) was "law of the case." The circuit court also concluded that since Wal-Mart had completed its construction activities on the Property and was issued a certificate of occupancy from the City on February 22, 2005, Plaintiffs' claims and request to nullify Wal–Mart's grubbing, grading, and other permits were moot. Finally, the circuit court concluded that Plaintiffs lacked stand-

ing to assert their claims against City Defendants.

On March 20, 2007, the circuit court entered a "First Amended Final Judgment as to All Claims Asserted Against [City Defendants] and Dismissal with Prejudice as to All Claims Asserted Against [State Defendants.]"

This timely appeal followed.

## DISCUSSION

### A.

■ Plaintiffs first argue that the circuit court's interpretation of HRS § 6E–42 "violates the spirit, purpose, and intent of [HRS] Chapter 6E to protect all burial sites, especially those not yet identified and/or located."

When construing a statute, however, we are guided by several well-established principles of statutory construction:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Peterson v. Hawaii Elec. Light Co.,* 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997), superseded on other grounds by HRS § 269–15.5 (Supp.1999) (citations, internal

quotation marks, and brackets omitted; block formatting altered). Therefore, we need not examine the legislative history of a statute, if the statute, on its face, is plain and unambiguous and can be given effect.

HRS § 6E–42 states, in relevant part:

> **Review of proposed projects.** (a) Before any agency or officer of the State or its political subdivisions approves any project involving a permit, license, certificate, land use change, subdivision, or other entitlement for use, *which may affect* historic property, aviation artifacts, or a burial site, [8] the agency or office shall advise the department [of land and natural resources] and prior to any approval allow the department an opportunity for review and comment on the effect of the proposed project on historic properties, aviation artifacts, or burial sites, consistent with section 6E–43, including those listed in the Hawaii register of historic places.

(Emphasis and footnote added.)

The foregoing statute is plain and unambiguous. It does not require review and comment from SHPD on *all* proposed projects "involving a permit, license, certificate, land use change, subdivision, or other entitlement for use"—only those "which *may* affect historic property, aviation artifacts, or a burial site[.]" (Emphasis added.)

Plaintiffs' interpretation of HRS § 6E–42(a) as requiring "all State and County permitting agencies" to seek review and comment from SHPD "prior to granting *any* project approvals" (emphasis added) impermissibly ignores the clear language of the statute regarding the projects which are subject to review and comment by SHPD and essentially renders that language superfluous and nugatory. When construing a statute, however, courts "are bound to give effect to all parts of a statute, and ... no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construc-

tion can be legitimately found which will give force to and preserve all words of the statute." *Keliipuleole v. Wilson*, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997) (quotation mark omitted).

### B.

Plaintiffs correctly note that HRS chapter 6E was amended in 1990 to provide "additional protection for native Hawaiian burial sites[,]" 1990 Haw. Sess. Laws Act 306, § 1 at 956, and that the legislature recognized in Act 306 that "native Hawaiian traditional and unmarked burials are especially vulnerable and often not afforded the protection of law which assures dignity and freedom from unnecessary disturbance." *Id.* Plaintiffs claim that in light of this stated legislative purpose, "the proper implementation of [HRS § ]6E–42(a) and its review and comment requirement necessarily requires that some level of analysis be undertaken to determine the presence of unmarked burial sites within the project under review."

However, "[t]he general rule of statutory construction is that policy declarations in statutes, while useful in gleaning the purpose of the statute, are not, of themselves, a substantive part of the law which can limit or expand upon the express terms of the operative statutory provisions." *Poe v. Hawaii Labor Relations Bd.*, 97 Hawai'i 528, 540, 40 P.3d 930, 942 (2002).

We observe, moreover, that the legislature has enacted other statutes to protect native Hawaiian burial sites. For example, HRS § 6E–43.6 sets forth procedures that must be followed in the event of inadvertent discovery of burial sites, and HRS § 6E–11 (Supp. 2008) provides civil and administrative violations for failure to comply with either HRS §§ 6E–42 or 6E–43.6.

Therefore, we decline Plaintiffs' invitation to enlarge the applicability and obligations of

---

8. Pursuant to HRS § 6E–2 (1993), "[b]urial site" means "any specific unmarked location where prehistoric or historic human skeletal remains and their associated burial goods are interred, and its immediate surrounding archaeological context, deemed a unique class of historic property and not otherwise included in section 6E–41 [ (1993) relating to cemeteries]."

HRS § 6E–42 beyond the express terms of the statute.

### C.

■ Plaintiffs contend that if HRS § 6E–42 allows City Defendants to determine whether a project under review will have an effect on historic properties or burial sites, City Defendants "must do much more than merely review a data base or list of known sites."

■ We agree that state or county permitting agencies do not have unfettered discretion in determining that SHPD's review and comment are unnecessary. Prior to approval of a permit, such agencies must advise and allow the SHPD to review and comment on the effect of a proposed project if there is a factual basis to know or reasonably believe that the proposed project "may affect historic property, aviation artifacts, or a burial site[.]"

In this case, Plaintiffs have not challenged the circuit court's finding of fact that

> [b]ased upon the evidence presented, including the historical development of the Property, and the Stipulation by the Plaintiffs and City Defendants that the City did not have knowledge of the burial site on the Property ..., this Court previously found that despite the City's investigation into the matter, *there is no evidence that the City Defendants knew of or should have known that a burial and/or archeologically significant site was, or could be, on the Property,* and ruled that the City Defendants did not violate HRS Section 6E–42(a).

(Emphasis added.) This uncontested finding of fact is binding on appeal. *See Wisdom,* 4 Haw.App. at 459, 667 P.2d at 848 (holding that "[i]f a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid"). Moreover, our review of the record on appeal indicates that DPP's decision not to submit Wal–Mart's permit applications to SHPD for review and comment was based not only on a review of POSSE, but on DPP's records and prior SHPD actions with respect to the Property.

Therefore, we agree with the circuit court that HRS § 6E–42 was inapplicable to the Wal–Mart Project because at the time DPP issued the grading and building permits, there was no factual basis to know or reasonably believe that the Wal–Mart Project "may affect" a burial site. Furthermore, even if this court agreed with Plaintiffs' argument that City Defendants should have conducted "a much more rigorous, searching and independent analysis of the project's effect[,]" Plaintiffs have provided no evidence that such a review would have uncovered the burial site's existence.

### CONCLUSION

In light of the foregoing discussion, we affirm:

(1) The March 20, 2007 "First Amended Final Judgment as to All Claims Asserted Against [City Defendants]; and Dismissal with Prejudice as to All Claims Asserted Against [State Defendants]";

(2) The July 13, 2004 "Findings of Fact, Conclusions of Law, and Order Denying Plaintiffs' [2nd MPI]"; and

(3) The October 6, 2005 "Findings of Fact, Conclusions of Law, and Order Granting [City Defendants'] Motion for Summary Judgment and Directing Entry of Final Judgment as to [City Defendants], Pursuant to [HRCP] Rule 54(b)[.]"