**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000261
25-AUG-2025
08:12 AM
Dkt. 84 SO**

NO. CAAP-22-0000261

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


SAVE KAIWA RIDGE, a nonprofit corporation,
Plaintiff-Appellant,
v.
DEPARTMENT OF LAND AND NATURAL RESOURCES OF
THE STATE OF HAWAII, MDHE, LLC, Defendants-Appellees,
AND
DOE DEFENDANTS 1-50, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC181001702)


SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, and Hiraoka and Wadsworth, JJ.)

Plaintiff-Appellant Save Kaiwa Ridge (**SKR**) appeals from the Final Judgment (**Judgment**), entered in favor of Defendants-Appellees Department of Land and Natural Resources of the State of Hawaiʻi (**DLNR**) and **MDHE**, LLC on March 24, 2022, in the Circuit Court of the First Circuit (**Environmental Court**).[1] SKR also challenges the Environmental Court's: (A) February 11, 2022 Ruling; and (B) March 8, 2022 "Order Granting: (1) [MDHE's] 'Motion for Summary Judgment on All Counts of [SKR's] First Amended Challenge/Appeal of 1711 Kanapuʻu Drive Residence & Stewardship - Final EA (FONSI) and Request for Declaratory & Injunctive Relief, Filed August 9, 2019' Filed on January 10, 2022 [Dkt. 143], and (2) [DLNR's] 'Motion for Summary Judgment' Filed on January 10, 2022 [Dkt. 154]" (**Order Granting MSJs**).

---

[1]   The Honorable Jeffrey P. Crabtree presided.

For the reasons discussed below, we affirm.

## I.  Background

Through MDHE, Dawn and Matthew Horn sought the necessary approvals from DLNR to build a single-family residence and undertake a forest management project (collectively, the **Project**) on roughly 37 acres of undeveloped land in Kailua (**Property**).  The Property comprised about 30.22 acres in the General Subzone of the Conservation District and about 6.67 acres in the Urban District.  Because the Project would involve the use of Conservation District land, it required a Conservation District Use Permit (**CDUP**) from DLNR.  See Hawaii Revised Statutes (**HRS**) § 183C-6 (2011).  Initially, MDHE was also required by the Hawaiʻi Environmental Policy Act (**HEPA**), HRS Chapter 343, to complete an Environmental Assessment (**EA**).  See HRS § 343-5(a) & (e) (2010 and Supp. 2016).  Under HRS § 343-5(e), once a final EA is accepted by the appropriate agency, the agency determines whether an environmental impact statement (**EIS**) is required.  An EIS is required "if the agency finds that the proposed action may have a significant effect on the environment."  HRS § 343-5(c)(4).

MDHE prepared a Final Environmental Assessment (**FEA**) which states, among other things, that the Project includes compliance with a Forest Stewardship Management Plan (**FSMP**) approved by DLNRs Division of Forestry and Wildlife, and a Conservation Plan (**CP**) approved by the Windward Oʻahu Soil and Water Conservation District.  DLNR, through its Office of Conservation and Coastal Lands (**OCCL**), reviewed the FEA and determined that the Project would not have significant environmental effects and therefore approved the issuance of a Finding of No Significant Impact (**FONSI**).  The Office of Environmental Quality Control (**OEQC**) published the FEA and FONSI in its environmental notice bulletin on September 23, 2018.

On October 23, 2018, SKR filed a document entitled "Challenge/Appeal of 1711 Kanapuʻu Drive Residence & Stewardship -- Final EA (FONSI) and Request for Declaratory & Injunctive Relief" (**Complaint**) in the Environmental Court.  The Complaint

challenged DLNR's FONSI and sought declaratory and injunctive relief under HRS § 343-7(b) (2010 and Supp. 2014). The Complaint stated that "[i]f necessary, this Challenge-Appeal may be construed as a Complaint for Declaratory, Injunctive and Other Relief" under Hawaiʻi Rules of Civil Procedure Rule 57.

On October 26, 2018, the Board of Land and Natural Resources (**Board**) went forward with its decision-making on MDHE's application for a CDUP. The Board approved the CDUP with certain conditions, including that the residence be located on the Property at Site "C" rather than Site "A."

On August 9, 2019, SKR filed its "First Amended Challenge/Appeal of 1711 Kanapuʻu Drive Residence & Stewardship -- Final EA (FONSI) and Request for Declaratory & Injunctive Relief" (**FAC**), which became the operative complaint in the underlying case.

On January 10, 2022, after discovery had closed, DLNR and MDHE filed separate motions for summary judgment (**MSJs**) as to all relief requested in the FAC. The MSJs were heard on February 10, 2022. On February 11, 2022, the Environmental Court entered its written Ruling granting the MSJs. The Ruling stated in part:

> 13. Here, the FEA provided a detailed description of the proposed action. The Project includes and the EA discussed the house, view planes, the access road, utilities, drainage, erosion, historic sites, the garden, the Forest Stewardship Management Plan (FSMP), the Conservation Plan, and mitigation measures. The descriptions of these features are quite detailed. The EA describes why no significant impact is expected.

> 14. Alternatives were also discussed and analyzed, such as Site A versus Site C. The criteria for evaluation of alternatives are "identification and summary of impacts considered." [Hawaiʻi Administrative Rules (HAR)] § 11-200-10(6). The FEA discussed the alternative sites to ["]evaluate impacts to soils, the site's structural feasibility, minimize impacts to vegetation, and to minimize and provide for health considerations of a disabled occupant." Dkt. 157 at 77. [SKR] argues that to switch from Site A to Site C requires a more exhaustive analysis of Site C. The court respectfully disagrees. Site C was considered as part of the EA. Nothing in the FEA indicates that any difference between Site C and Site A would change the finding of no significant impact. It must be remembered that this is a huge site – 37 acres -- only a fraction of which would be disturbed, and much of that "disturbance" from a beneficial Forest Stewardship plan. It is evaluated as a whole, as a Project, in context of the entire property. Even if there are differences between putting the house at

3

Site A and Site C, that does not mean the overall Project analysis in the EA is defective, especially where Site C is indisputably lower on the ridge, resulting in less visual disturbance to the community.

15. The EA specifically addressed erosion and storm run-off (and mitigation measures for same) that may result from the project, and concluded that any additional erosion and run-off from the site would likely be minimal, especially with the mitigation measures planned.

16. The EA also included responses to public comments that specifically addressed issues raised by SKR.

17. [SKR] presented no relevant, admissible evidence of a significant negative effect attributable to the Project itself, or that the statutory requirements for an EA were not met.

18. On the issue of HRS 6E and historic properties or features, the court is not convinced a 6E-42 review was necessary, but even if it was, [DLNR's State Historic Preservation Division] was given an opportunity to respond and did not. The FEA concluded that based on prior surveys, no archaeological sites or features were present, and no cultural practices would be affected. No contrary admissible evidence was received.

19. Bottom line: the court concludes the EA/FEA included the contents required by law. There is no sign the FEA was not compiled in good faith. It provides more than sufficient information to "evaluate the possible environmental effects" of the Project. Kilakila[ ʻO Haleakala v. Univ. of Hawaiʻi], 138 Hawaiʻi [364, 370, 382 P.3d 176, 182 (2016)]. The court is not allowed to substitute its own opinions or judgment on whether the Project is environmentally appropriate, even if the court in the first instance may have decided differently. For these reasons, the court concludes the agency did not abuse its discretion, the rule of reason is met, and summary judgment is appropriate as a matter of law. Price[ v. Obayashi Hawaii Corp.], 81 Hawaiʻi [171, 185, 914 P.2d 1364, 1378 (1996)].

20. The CDUP. [SKR] challenges the CDUP in its MIO. This is a separate issue from the EA/FEA and the FONSI. The court is not aware of any authority that prohibits issuing a CDUP just by filing a legal challenge to the EA/FONSI.

The Environmental Court entered the Order Granting MSJs on March 8, 2022, and the Judgment on March 24, 2022.

## II. Discussion

It is difficult to discern exactly what SKR's points of error are. The opening brief comprises 101 separately numbered paragraphs, with the points-of-error section spanning paragraphs 36 through 48. The latter paragraphs mix lengthy, overlapping assertions of error with substantial legal argument, including citations to multiple constitutional provisions, statutes, rules,

and cases, in an apparent effort to touch upon any and every authority that could possibly, even remotely relate to SKR's appeal. It is near-impossible to distinguish the numbered points of error from the numbered arguments. This kitchen-sink approach violates Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4) which requires "[a] <u>concise</u> statement of the <u>points of error</u> set forth in <u>separately numbered paragraphs</u>." (Emphasis added.)

Gleaned from SKR's argument section, SKR appears to contend, as best we can tell, that the Environmental Court erred in granting the MSJs because: (1) the FEA failed in several respects to fully disclose and assess all of the information required by HRS Chapter 343 and HAR Chapter 11-200, which information was necessary for DLNR and the Board to properly evaluate the possible environmental effects of the Project; and (2) DNLR violated various constitutional and statutory provisions when it accepted the non-compliant FEA, made the FONSI finding, approved the deficient FEA and conservation district use application, and granted MDHE a "premature CDUP."

## A. Sufficiency of the FEA

"For agency determinations under HEPA, 'the appropriate standard of review depends on the specific question under consideration.'" <u>Kilakila ʻO Haleakala</u>, 138 Hawaiʻi at 375-76, 382 P.3d at 187-88 (quoting <u>Sierra Club v. Dep't of Transp.</u>, 115 Hawaiʻi 299, 315, 167 P.3d 292, 308 (2007)). Whether the FEA contained sufficient information to comply with HRS Chapter 343 is a question of law. <u>See</u> <u>Price v. Obayashi Hawaii Corp.</u>, 81 Hawaiʻi 171, 182, 914 P.2d 1364, 1375 (1996).

We apply the "rule of reason" standard to determine whether the FEA was legally sufficient in adequately disclosing facts to enable DLNR to render an informed decision. <u>See</u> <u>Unite Here! Local 5 v. PACREP LLC</u>, ___ Hawaiʻi ___, ___, ___ P.3d ___, ___, No. SCAP-22-0000601, 2025 WL 573299, at *14 (Haw. Feb. 21, 2025) ("[A]lthough this case presents the question of the sufficiency of the State's compliance with regulations regarding an EA rather than an EIS, we recognize the same latitude in the HAR given to the accepting agency over EISs for EAs, and apply

the same standard in evaluating EAs." (quoting Hoʻopakele v. Dep't of Acct. & Gen. Servs., No. CAAP-14-0001328, 2016 WL 197012, at *3 (App. Jan. 12, 2016) (mem. op.))). Under this standard,

> an EIS [or EA] need not be exhaustive to the point of discussing all possible details bearing on the proposed action but will be upheld as adequate if it has been compiled in good faith and sets forth sufficient information to enable the decision-maker to consider fully the environmental factors involved and to make a reasoned decision after balancing the risks of harm to the environment against the benefits to be derived from the proposed action, as well as to make a reasoned choice between alternatives.

Unite Here! Local 5, 2025 WL 573299, at *14 (quoting Price, 81 Hawaiʻi at 182, 914 P.2d at 1375).

We conclude that the FEA satisfied the rule of reason standard. The FEA includes "a detailed description" of the Project, an evaluation of the "direct, indirect, and cumulative impacts" of the Project, "a discussion of alternatives" to the Project, and a description of "measures proposed to minimize potential impacts" of the Project. Kilakila, 138 Hawaiʻi at 370, 382 P.3d at 182. Specifically, Section 2.0 of the FEA contains a detailed description of the Project. Potential impacts and mitigation measures are discussed in Section 3.0 of the FEA. After evaluating various factors, reports, and assessments, the FEA concludes, for example, that "[n]o significant storm drainage impacts are anticipated"; "[n]o significant impacts to scenic vistas or existing open preservation landscapes are anticipated"; "it is not expected that any archaeological sites or features will be found in the project area";[2] "the exercise of native Hawaiian rights . . . related to gathering, access or other customary activities will not be affected by the activities of the proposed home"; and "[t]he proposed project is not anticipated to adversely impact any natural or cultural

_____

[2] Contrary to SKR's argument, HRS § 6E-42(a) (Supp. 2015) was not applicable in these circumstances, where there was no factual basis to know that the Project "may affect" historic property, aviation artifacts or a burial site. See Hui Malama I Na Kupuna O Nei v. Wal-Mart, 122 Hawaiʻi 171, 180, 223 P.3d 236, 245 (App. 2009). The FEA includes an Archaeological Literature Review and a Cultural Impact Assessment, both of which are summarized in the FEA.

resources[.]"  Section 3 also discusses mitigation measures, including measures to address potential impacts of soil erosion during grading and excavation.  The FEA included discussion of alternatives to the Project, including the alternative of doing nothing, and the option of locating the house on Site "C" (an eventual condition of the CDUP).

SKR argues that the FEA "did not fully disclose and assess all the likely significant impacts of MDHE's Project at all of its alternative sites in equal detail."  However, to satisfy the rule of reason, an EA "need not be exhaustive to the point of discussing all possible details bearing on the proposed action . . . ."  Unite Here! Local 5, 2025 WL 573299, at *14 (quoting Price, 81 Hawaiʻi at 182, 914 P.2d at 1375).  The Environmental Court correctly concluded that: "Nothing in the FEA indicates that any differences between Site C and Site A would change the finding of no significant impact. . . .  Even if there are differences between putting the house at Site A and Site C, that does not mean the overall Project analysis in the EA is defective, especially where Site C is indisputably lower on the ridge, resulting in less visual disturbance to the community." We likewise conclude that the FEA "sets forth sufficient information to enable [DLNR] to consider fully the environmental factors involved and to make a reasoned decision" regarding the alternative sites for the house.  Id.

SKR argues that the FEA failed to disclose the following impacts:  (1) the impacts of the Project to erosion, sedimentation, and runoff; (2) the impacts of the Project to historical and cultural resources; (3) the impact of "converting" a 6.6 acre parcel to agricultural use; and (4) the cumulative impact of the Project on the loss of open space and view planes.  The Environmental Court addressed these issues and concluded that the EA included "quite detailed" discussions of "the house, view planes, the access road, utilities, drainage, erosion, historic sites, the garden, the Forest Stewardship Management Plan (FSMP), the Conservation Plan, and mitigation measures."  Based on our review of the FEA, we reach the same conclusion:  the FEA's discussion of these impacts meets the

rule-of-reason standard.[3]

SKR asserts that the FEA "illegally segmented" the Project. Improper segmentation of a project occurs when, pursuant to HAR § 11-200-7,[4] "[a] group of actions . . . [that] shall be treated as a single action" are improperly "segmented" into component parts. See Unite Here! Local 5, 2025 WL 573299, at *17; see also Sierra Club, 115 Hawaiʻi at 338, 167 P.3d at 331 (stating that rules like HAR § 11-200-7 "are meant to keep applicants or agencies from escaping full environmental review by pursuing projects in a piecemeal fashion"). That is not what happened here, where the house, the FSMP, the CP, and the garden were all considered part of the Project and analyzed as part of the same FEA.

In sum, the FEA appears to have been compiled in good faith, and SKR points to nothing to suggest otherwise. Based on our review of the FEA, we conclude that it "sets forth sufficient information to enable the [DLNR and the Board] to consider fully the environmental factors involved and to make a reasoned decision" regarding the Project and "a reasoned choice between alternatives." Unite Here! Local 5, 2025 WL 573299, at *14 (quoting Price, 81 Hawaiʻi at 182, 914 P.2d at 1375). The Environmental Court did not err in ruling that the FEA was legally sufficient under the rule-of-reason standard.

## B. Issuance of the FONSI

DLNR's finding of no significant environmental impact is a mixed determination of fact and law that we review under the clearly erroneous standard. See Kilakila, 138 Hawaiʻi at 376, 336 P.3d at 188. Such a determination is clearly erroneous if "the record lacks substantial evidence to support the . . . determination" or, "despite substantial evidence to support the

---

[3] We note that SKR's contention that the Property will be "converted" to agricultural use is unfounded. See HAR § 13-5-23. Similarly unfounded is SKR's assertion that MDHE failed to consult with owners of nearby properties. Section 7 of the FEA contains written comments received regarding the draft EA, including those of nearby property owners.

[4] Although not applicable to the present case, HAR § 11-200-7 was non-substantively amended, effective August 9, 2019. See HAR § 11-200.1-10 (2019).

. . . determination, the appellate court is left with the definite and firm conviction that a mistake has been made." Unite Here! Local 5, 2025 WL 573299, at *14 (quoting Kiaʻi Wai v. Dep't of Water, 151 Hawaiʻi 442, 454, 516 P.3d 725, 737 (2022)). "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (quoting Kiaʻi Wai, 151 Hawaiʻi at 454, 516 P.3d at 737 ).

The supreme court has also recognized:

> [C]ourts generally grant significant weight to an agency's determinations based on technical or scientific facts. This deference arises from the fact that agencies possess and exercise subject-matter expertise and experience the courts generally lack. These qualities place agencies in a better position than the courts to evaluate scientific investigations and research. Courts are therefore hesitant to substitute their judgment for an agency's when the agency uses its expertise and experience to make a mixed determination of law and fact.

Keep the N. Shore Country v. Bd. of Land & Nat. Res., 150 Hawaiʻi 486, 504, 506 P.3d 150, 168 (2022) (citations, brackets, and quotation marks omitted).

DLNR's acceptance of the FEA and issuance of the FONSI were supported by substantial evidence in the record. As discussed above, the FEA was legally sufficient in adequately disclosing facts to enable DLNR to render an informed decision regarding the environmental effects of the Project. In particular, Section 6.0 of the FEA fully explained why none of the criteria set forth in HAR § 11-200-12[5] supported a finding of significant impact. DLNR's mixed finding and conclusion that the Project will not have significant environmental effects and will not require preparation of an EIS was not clearly erroneous. The Environmental Court did not err by granting the MSJs on that basis.

---

[5] Under former HAR § 11-200-12 (2007), agencies were required to consider thirteen criteria to determine whether a proposed action would have a significant effect on the environment. Although not applicable to the present case, HAR § 11-200-12 was amended, effective August 9, 2019, and includes a revised version of these same thirteen criteria. See HAR § 11-200.1-13 (2019).

## 3. Issuance of the CDUP

SKR conceded below that it was not substantively challenging the issuance of the CDUP. Rather, it was arguing only that the CDUP could not be properly issued while this litigation was pending and before the court resolved the FONSI challenge. SKR appears to make a similar argument on appeal.

Once a FONSI has been issued, HRS § 343-7(b) gives a party thirty days to file a lawsuit challenging the determination that an EIS was not required. Nothing in HRS § 343-7 or in Chapter 343 more generally stays the effectiveness of a duly published FONSI, or prevents the issuance of a related CDUP, while a lawsuit is pending. If SKR had wanted to prevent the Project from moving forward until the trial court had ruled, it could have moved for a preliminary injunction. It did not do so prior to the issuance of the CDUP. The Environmental Court did not err in concluding that no authority "prohibits issuing a CDUP just by filing a legal challenge to the EA/FONSI."

## III. Conclusion

For the reasons discussed above, the Final Judgment entered on March 24, 2022, in the Environmental Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawaiʻi, August 25, 2025.

On the briefs:

Linda M.B. Paul,
for Plaintiff-Appellant.

Linda L.W. Chow and
Lauren K. Chun,
Deputy Attorneys General,
for Defendant-Appellee
Department of Land and Natural
Resources of the State of
Hawaiʻi.

Scott C. Arakaki
for Defendant-Appellee MDHE
LLC

/s/ Karen T. Nakasone
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge